Good morning. My name is Dave Merchant. I'm with the Federal Defenders of Montana, and I represent Brian Barker. And if you could keep your voice up, please. I will try. I would ask to reserve two minutes for rebuttal. Okay. It counts down. We'll try to help you keep track. Thank you very much. Last week, the Court issued an order asking us to be prepared to discuss the 851. I did not argue it in my brief. It was argued in the previous brief. What I had done was simply by reference and tried to incorporate that. In reading the rule and reading the case law, Your Honors, I messed up. I should have argued that. It's a little complicated for us to go find the briefs. In fact, it was very complicated. Absolutely. And I have a suggestion to the Court. I would suggest to the Court that it allow both myself and the government to simply cut and paste what was submitted before under the new heading and submit it by close of business on Friday and not argue it today. I think that it was properly briefed and argued the first time. My mistake, I guess, would have been when the Court issued the remand, it simply said, we're not getting to that yet. And I just assumed mistakenly that it would join the other appeal or my appeal. So with that suggestion to the Court, if the Court would like another way to do it, I'm more than happy to oblige the Court. But I think if we simply submitted what was previously done to the Court, it would answer the question. And to be quite candid with the Court, it's not the strongest argument in this case. Well, submitting that, it sounds like a good idea. We're happy to have you do that. You might be asked questions about it today nonetheless. Nonetheless. Thank you, Your Honor. I mean, this is our chance to have at you. Absolutely. Okay. Absolutely. With that said, this is one big conspiracy. The government says, I'm trying to argue that, and that's exactly what I'm arguing. And what I'm asking the Court to look at as a framework or as a foundation to this, we have a Missoula indictment from 2003. We have a Billings indictment from 2004. We have a plea agreement from the end of 2003. Now, the standard is very clear. In construing the plea agreement, if the Court finds that the plea agreement is ambiguous, then the Court orders us to determine what the defendant reasonably believed to be the terms of the plea agreement at the time of the plea. Yeah. Just an ordinary contract instruction. Absolutely. And this Court has already found the plea agreement to be ambiguous. So what was Brian Barker thinking at the time of the plea? Think of it in these terms. Missoula indictment comes down. In doing this, would you address, because there is information in the record that indicates that you were not the counsel who negotiated this case. I was not. Rob Stephenson. Stephenson. He sought assurances or clarification in the course of the discussion. I guess it was over a day's period or two days' period that what was encompassed and the record reflects that the U.S. attorney's responses were ambivalent. That's what Rob Stephenson testified at the evidence hearing. That's what they thought. So in that light, are we talking about a breach of contract, or are you arguing that there was no contract, no meeting of the minds? No, Your Honor. I'm arguing that there's a breach of contract. Why wouldn't this be a case in which there was no agreement and the remedy would be to vacate the plea agreement? Well, you can go ahead with your argument, but I'd like to sort of understand what the nature of the contract dispute is here. Because just explain why I have this concern. If you step back and look at it just as a breach of contract, there's ambivalence on both sides. Mr. Stephenson is advising that it will sweep in everything, and yet when the drug amounts for the pitch are not included in the drug amounts, well, he knows it's gone light, so the subsequent conduct of the U.S. attorney would imply that they're not interpreting it the way you are. I understand exactly what you're saying. Okay. So it sounds like maybe both sides had a reason to be a little ambiguous in what the scope of the plea was, and the question is whether that would defeat a mutuality of understanding at the time. That may be the case here. That's kind of what the district court, when it issued its order, said, that Mr. Stephenson was walking that fine line. The problem that comes with that is, the standard requires what was Brian Barker thinking at the time of the plea. What Rob Stephenson was thinking, quite frankly, is irrelevant. And we know that the pitch weight isn't included in the relevant conduct three months later. The pitch weight, that pound of methamphetamine, Rob Stephenson says, yeah, this is probably light. But the day that this court orders me, as a defense counsel, to come to the district court and say, you know, you guys missed a whole bunch of weight. We need to ramp up that relevant conduct. My guy needs more time because they simply missed it. The day that that happens is a sad day for the American justice system. So the fact that Rob Stephenson may have been walking that fine line, quite frankly.  Well, it's part of the Sixth Amendment. The government's entitled to effective assistance of counsel if it comes from the defense. O'CONNOR. And, unfortunately, that may happen more often than not. With this, though, quite frankly, Your Honors, we have the Missoula indictment is the time, place, and people. Missoula indictment is December 2002 through March 2003. Missoula, Great Falls, Billings, and elsewhere in the District of Montana. It involves Barker, Tutsloff, and others. That's very important. We know that the Billings superseding indictment is January 2003 through July 2003. Billings and elsewhere in Montana. Barker, Amanda Brothers, Shielapich, and others. The Missoula political agreement says no further action, and the language that we are all focusing on is acts or occurrences giving rise to this indictment. That's the key to this, Your Honors. Here's the problem. When the discovery dump was done on Rob Stephens and Brian Barker, it included everything, including the July 2003 arrest. All of that stuff from July 23, 2003 back was included. Shielapich was debriefed just after the pound of methamphetamine gets to her in June. That stuff is there. What's the date of the first amendment? The first indictment, I'm sorry. December 2002 to March of 2003. No, no, I'm sorry. What's the date on which that indictment was handed out? May 7, 2003. Right. So, obviously, the acts or occurrences giving rise to that indictment were all those that were prior to that indictment. Absolutely. So how do we then say that an act in July of that year, that is to say after May, was an act or occurrence giving rise to that indictment? Because Shielapich knew on June 10, 2003, she told law enforcement that she had known Brian Barker for six to nine months. She began dealing with him in December 2002. She got use quantities of methamphetamine. It ramped up. She got two ounces, four ounces a couple of times, and then eight ounces, all the way through May of 2003. In June, that's the first time Brian Barker sends her the package. It's the first time mail is used. But is the conviction under the second indictment based on any act that occurs prior to the date that the first indictment is handed up? Well, it's based on the second indictment is for the individual act of July 23rd and the conspiracy. The court ends up finding them not guilty of a conspiracy. If conspiracy falls out, that's right, because that's count one. Right. The problem with that, though, is Pitch is part of the conspiracy in the first indictment. She is receiving methamphetamine. She is selling methamphetamine. Let me ask you this, because I find this case somewhat difficult because the pieces are odd and I'm not accustomed to reading quite this language. So would you maybe be making the same argument if the second indictment had never included count one but had only included counts two and three? I probably would because... Because at that point conspiracy is entirely off the table, not merely now acquitted conduct, but this is now unindicted conduct, and the only indicted conduct is conduct that takes place after the date of the first indictment. Right. But the plea agreement that Brian Barker agrees to in October is for that conspiracy during that period of time and others in Billings. He just assumed... I understand and others may well include Pitch. I got that part. Right. But that's an indictment for a conspiracy with a specific end date, according to the indictment, or even if we extend it beyond the date specified in the indictment, which is March 2003 to May, the date the indictment is handed up, nonetheless the event at issue in the second indictment under which the convictions are obtained, counts two and three, is later than that last date, that is to say May 2003. That's absolutely right. So how do I say... I'm trying to understand your argument sympathetically. How do I say that the later date, the July date, for that event is somehow covered under the plea agreement when, in other words, an actual occurrence is giving rise to this indictment, meaning the earlier indictment? My time is about to run out. No, no, no. Listen, we'll talk as long as we need to to get it right. Brian Barker, on October 27th of 2003, believed in his head, and it's unrefuted at the evidentiary hearing, that his plea agreement would take care of everything. Yeah, but I have to say this one. He can believe anything he wants in his head, or he can say now he can believe anything he wants in his head, but as we ordinarily do with a contract, I mean, I look at the words of the contract, and there's an outer boundary to the ambiguity, and if it's outside the ambiguity, he can say whatever he wants, and it nonetheless is, I think, available to a district judge on remand as it was to Judge Siebel to say, you know, you can say what you want, but here's the outer boundaries of the ambiguity, and here's what I find was the meeting of the minds. The Pitch Affair was an ongoing part of his conspiracy. It began in December 2002, and it ended when the package was intercepted by law enforcement in June of 2003. When Brian Barker was at the plea colloquy, he was very clear with Judge Malloy, I'm trying to avoid life. In fact, they had a colloquy with the government's attorney, the defense counsel, and the judge talking about that. Brian Barker was concerned with getting life. And what he thought, this isn't Brian Barker, as I say in Montana, his first rodeo. His criminal history is quite extensive, going back to 77, I believe. So he wanted to make sure that this plea agreement stopped the bleeding, that this would be it. We don't have any excuse for not wanting to do it. And we also don't have any excuse for wanting a deal for nothing.  Breyer, did you want to answer that? No. Well, here's what troubles me. We can attach a specific act of the substantive offense, but we have the creation of an agreement under conspiracy. What evidence does the government show us as to the termination date of that agreement? The termination date of which agreement, Your Honor? The conspiracy is an agreement. Well, I mean, if we're talking about the transaction involving Sheila Pick, you know, the Billings Court found that there was no conspiracy. The Billings Court found that there was no overt act in Billings. The Billings Court found that, in fact, Mr. Barker himself denied that there was a conspiracy in Billings and denied any connection to the Missoula conspiracy. So, you know, trying to establish. Okay. I'm sorry. I'm sorry. I guess I didn't make myself understood. I want what evidence do we have on the record indicating the termination date of the agreement to perform certain acts? Okay. Between Mr. Barker and Mr. Tetzlaff in Missoula and Great Falls, or between Mr. Barker and Miss Hitch in Billings? I'm not aware whether there was an established termination date for the conspiracy in Great Falls, Missoula. And, again, I don't think that there was. I mean, he was acquitted of conspiracy in Billings. So there was no agreement in the first place. All right. Let me ask you this. Count one in the Billings indictment alleges a conspiracy. And the conspiracy, at least as I understand the second indictment, the Billings indictment, overlaps in time with the conspiracy alleged in the first indictment. Is that right? That's correct, Your Honor. Why doesn't count one, merely the bringing of count one, violate the plea agreement? Well, Your Honor, if you were to have a Venn diagram, you would be able to see that the time frame that was covered by the Missoula indictment overlaps with the time frame that's covered by the Billings indictment. I do see that, and that's the point of my question. Right. However, the operative conduct, the overt act that is the criminal enterprise in the pick transaction, all occurred after the operative time frame of the Missoula indictment. Well, I'm not sure that that's right. That is to say, we have a conspiracy alleged in the first one, and it includes geographically Billings, and it includes not only Barker and Tetzlaff, it includes others, and I assume, is it Pick or Pitch? People at the time were calling her Pick. It includes Sheila. Others, I mean, that includes anybody, including, I guess, you, but also including Sheila Pick. So I assume that first indictment covers a conspiracy, and if there is a conspiracy ongoing at that earlier time, which it appears from the evidence we have in front of us there was, now, you might not have known about her role fully until later, but it's pretty clear what we now know, that there was an earlier conspiracy that involved her that was during that period. I guess the point that I have to go back to there, Your Honor, is that that conspiracy, if it existed, and, again, there's no evidence that it did, if there were evidence, then, theoretically, the Billings District Court would have found her guilty of it, would have found Barker guilty of it, but that that conduct, that agreement, that conspiracy was not the basis for the Missoula indictment. Well, I have trouble seeing that the first count of the second indictment, the Billings indictment, was not a violation of the agreement, given the fact that you're alleging conspiracy, the period overlaps, the geography overlaps, and others includes Pick. Now, it turns out the jury didn't agree with you. Whether you were able to prove it or not, the jury didn't think you had. What do we do if, and you're not going to concede it, and I'm not asking you to, but what do we do if we conclude that bringing count one of the Billings indictment was a violation of the agreement, because what the agreement promises is the government, quote, shall bring no further action against the defendant based upon da-da-da. So simply bringing the action is a violation. What do we do if we conclude that you violated it in that sense? Well, you know, again, I... Does that make any difference? Yeah, you know, I don't want to be redundant, but at the time that the Missoula indictment was filed, the AUSA that filed that indictment didn't know Sheila Pitch's name. You're fading my hypothetical. Oh, I am saying I'm asking you to assume that the first count of the later indictment, that is to say the Billings indictment, does sufficiently overlap with what's in the plea agreement and with the acts or occurrences giving rise to the first indictment that the mere bringing of count one of the second indictment is a violation of the agreement. I understand you're not conceding that, but for the purposes of my question, assume that that's so. What do we do? Well, you know, I think in this circumstance we're talking about harmless error because he was acquitted of that charge and, you know, basically even if it was a violation of the first of the non-prosecution provision of the plea agreement, he was not, he stands harmed by that in no way. It's hard to sort out sometimes. You know, juries will hear all kinds of stuff. Although we have all these rules about no compromise verdicts, we know that they do that. And they might have decided, you know what, we're not going to convict on the conspiracy but we're going to get on the particular acts. I'm not sure that it made no difference to them. There's no way I can know. There's no way you can know. This was a bench trial. I mean, I understand what you're saying. Okay. Well, the same thing with respect to the judgment. Sure. I see that my time is up. If there are no further questions, thank you, Your Honors. Response? It is not harmless error because he defended that charge throughout the bench trial. He defended the conspiracy. Yeah, and he wins. It's not harmless error. Well, but he wins on that point. Or to say, it's not harmless in the sense that he was forced to defend it. But I think he was he paying for his attorney at that time? I'm sorry? Was his attorney at that trial a CJA attorney? No. He had retained Rob Stephens on the first case. And when the second case, Rob Stephens, in my discussions with Mr. Stephens, basically volunteered to represent him in the second because he felt it was a violation of the agreement. Okay. So he's not out of pocket. It's a pain in the neck to have to defend him, but he gets acquitted on that one. So even assuming that bringing that charge, Count 1, was a violation, he's acquitted. So how does that tell me what I should do with Counts 1 and 2 if I were to conclude that Counts 1 and 2 are properly brought? Judge Fletcher, I totally agree with you that simply bringing the indictment that includes that is a violation of the previous plea agreement. And the fact that he may not have paid money to an attorney to represent him doesn't mean there wasn't an emotional cost to that, wasn't a cost to him to defend that charge because that was obviously the most serious of the charges because that would have brought in the most relevant conduct and ramped up his, you know, his guidelines. And at that time we had mandatory guidelines. So what do I do if I assume it's a breach but nonetheless we end up in the same position at the end, is that Count 1 had never been brought. He's convicted on Counts 2 and 3. It seems to me the evidence on Count 2 and 3 was so strong, I'd be astounded if they had been brought alone, that there would have been no conviction. I would suggest to the court that the court should reverse the conviction and allow him to stand trial on those two charges as I stand alone. Standing alone? Yes, Your Honors. Okay. But briefly, the questions was what did the government know? Sheila Pitch debriefed in June of 2003, told them that she had been starting in December of 2002. She testified that at a trial, in fact, at page 196 of the trial transcripts that the government supplemented. The other thing was, keep in mind, she was charged with a conspiracy of June 10th of 2003. Clearly that conspiracy with Brian Barker predates that because she testifies that Barker shows up and just gives her dope over and over and over and over again. She didn't know when he was come, but she would, when he came, take the dope, give him the money, and go on. There was an agreement, and to say that there isn't an agreement is simply disingenuous. We also know that Sandy Borklin testified at the grand jury on May 7th of 2003, and Sandy Borklin worked with the Missoula high-intensity drug team. We know from her testimony that on December 27th of 2002, that Bill Clunt, who worked with the central Montana high-intensity, had stopped Barker, arrested him. That's where the phone call, they give the phone call to Tutsloth to go clean up the house and bring bail money. So we have two different law enforcement agencies. Ross Magnuson works for and is the agent in charge of the central high-intensity drug. He's the one that testifies on the Billings indictment. So to say that simply because the prosecutor at the time of the indictment didn't know it, they admitted in the evidentiary hearing that there were reports floating around that had both things.  From Billings, he meets Tutsloth in Bozeman. Tutsloth then goes up to Great Falls. Barker goes back to Billings. At some points, Tutsloth goes to Missoula. It's Tutsloth that's in Missoula with Barker's dope. Barker never goes to Missoula. Barker is in Billings, Bozeman, and Great Falls. Tutsloth is in Great Falls when he, or he is arrested in Missoula. He's also arrested in Sealy Lake, which is north of that. So it's Tutsloth's actual acts, but it's Barker's dope. Barker's dope that comes through Billings where Sheila Pitch gets her dope. The last thing that – think of these terms, Your Honors. Barker – or Tutsloth gets arrested with Cleland in Sealy Lake. He's not on that indictment. He's another. Sandy Borklin testifies at page 19 in the sealed excerpts of the record that Zachary Zonderson was with him when he was arrested in Missoula, Tutsloth. He's another, too. Sheila Pitch is just as easily another. Judge Fletcher, I'd like to remind you of McCulloch v. City of Compton. It's a case that you sat on and decided October 23rd of 2008. And in that, this Court determined at the plea agreement, we consider the circumstances under which an agreement was made, including its object, nature, and subject matter. Again, Barker thought this took care of everything. That's what Barker thought. What the grand jury thought in May, I don't care about. I don't care about what Rob Stephens thought. I care about what Rob – what Brian Barker thought and what was reasonable. He wanted to take care of everything. He knew because all that discovery is in what he's reading. He's reading all of that. He knows Pitch is involved in everything that involves the Missoula indictment because that discovery is included. And to say it's not flies counter. Let me ask this question, just so that I could understand your argument. Of the four counts in Missoula, are you arguing that only the conspiracy count carried over into Billings? No. Because the methamphetamine – All right. Excuse me. Are you saying that all the four counts carried in? Yes, Your Honor, because the locus, the methamphetamine, starts in Billings. Well, it starts in – Okay. It starts in Billings, though, for the Montana conspiracy. I see. The last thing I'd like to point out to the Court is this. I – okay. I'm trying to understand you, but I'm not sure that I do. People often say that about me. Okay. The last thing is the money. And I know that the government says the money isn't involved. But when Barker gets arrested on July 23rd, he has $36,000 on him. There is a forfeiture clause in the Missoula indictment. And, in fact, part of the plea agreement is that he forfeits $25,000. The AAUSA says, well, yeah, I came up with that number. I'm not sure where it comes from. The grand jury asked them, where did you get that number? Well, it's evidence. It's kind of – it's out there. We have $15,000 worth of methamphetamine. The government's not going to go sell that to get the money. They had to get the money somewhere. And there's no forfeiture in the Billings superseding indictment. Right. So if the money from the pitch transaction isn't part of the Missoula affair, then the government has to return that money because they didn't lawfully forfeit it in the Billings indictment. Can I get back to the question I asked before? Yes. If you say that more than the conspiracy survived, how do you explain the part of the agreement stating acts and occurrences giving rise to this indictment? Are you saying there's no limitation whatsoever? Oh, no, no. There are absolutely limitations. Well, that's what I was trying to find out whether you – it seems to me that when you talk about acts or occurrences giving rise to this agreement would be counts two, three, and four of the original indictment. In fact, the only possible way that I can understand your argument is that conspiracy was sort of open-ended. Your Honor, I believe that conspiracy is open-ended. I think that there has to be a beginning and in the case law you can walk away from a conspiracy. But again, the drugs and the money found, except for the one pound which wasn't there in July, is attributed to Barker in the Missoula indictment. The heroin is there. Are you saying that the limiting principle is known to the government? In other words, does he get a pass on things that they would discover had no knowledge after May? Or is it enough for your argument that they knew about Sheila Pitch? I think it's enough for my argument that they knew about somebody – that there was drug trafficking in Billings. Yeah. I don't know. Thank you. Okay. Thank you both for your arguments. On the 851 question, why don't we do this?          Okay. Thank you. Your Honor, I think the argument for this case is that, rather than put you to work that may or may not be necessary, we'll – within the next day or so, if we want the brief such as you just suggested, we'll issue an order to that effect. Okay. So without an order, you're finished with the briefing. If you get an order, it'll come out in the next day or so. Thank you, Your Honor. Thank you. The case of United States v. Barker is now submitted for decision. The next case on the argument calendar, I'm not sure I'm pronouncing it right, versus Seeler.
judges: Aldisert, Fletcher W. , Fisher